[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**RECEIVED**

2/13/2024

EW

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

Nikole Grady )
_____ )
4161 South Drexel Blvd apt 203 Chicago IL 60653 )
_____ )
)
Plaintiff(s), )        Case Number: _____ NEW CASE
)
**24-CV-1222**
v. )
DM Trans / Arrive Logistics )
_____ )        **JUDGE SHAH**
7701 Metropolis Dr Building 15, Austin, TX 78744 (Corporate) )        **MAGISTRATE JUDGE HARJANI**
_____ )
)
Defendant(s). )

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is ___Nikole Grady_____ of the

county of _____Cook_____ in the state of _____Illinois_____.

3. The defendant is ____DM Trans / Arrive Logistics_____, whose

street address is ____7701 Metropolis Dr Building 15, Austin, TX 78744 (Corporate)____,

(city)___Austin___(county)___UNKNOWN___(state)___TX___(ZIP)__78744__

(Defendant's telephone number) (____) – __(214) 969-1172_____

4. The plaintiff sought employment or was employed by the defendant at (street address)
___REMOTE / HOME_____(city)___Chicago_____

(county)___Cook___(state)___Illinois___(ZIP code)__60637___

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.    The plaintiff [***check one box***]

   (a)   ☐   was denied employment by the defendant.

   (b)   ☐   was hired and is still employed by the defendant.

   (c)   ☑   was employed but is no longer employed by the defendant.

6.    The defendant discriminated against the plaintiff on or about, or beginning on or about, (month)____September____, (day)____01____, (year)____2022____.

7.1   (***Choose paragraph 7.1 or 7.2, do not complete both***.)

   (a)   The defendant is not a federal governmental agency, and the plaintiff
         [*check one box*] ☑ *has*   ☐ *has not* filed a charge or charges against the defendant

         asserting the acts of discrimination indicated in this complaint with any of the

         following government agencies:

         (i)   ☑ the United States Equal Employment Opportunity Commission, on or about
               (month)____December____ (day)____01____ (year)____2022____.

         (ii)  ☐   the Illinois Department of Human Rights, on or about

               (month)_____ (day)_____ (year)_____.

   (b)   If charges *were* filed with an agency indicated above, a copy of the charge is

         attached. ☑ Yes, ☐  No, **but plaintiff will file a copy of the charge within 14 days**.

         It is the policy of both the Equal Employment Opportunity Commission and the Illinois

         Department of Human Rights to cross-file with the other agency all charges received. The

         plaintiff has no reason to believe that this policy was not followed in this case.

7.2   The defendant is a federal governmental agency, and

   (a)   the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month)_____ (day)_____ (year) _____

☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

(day) _____ (year) _____.

(c)    Attached is a copy of the

(i)  Complaint of Employment Discrimination,

☐ Yes    ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐    the United States Equal Employment Opportunity Commission has not

issued a *Notice of Right to Sue.*

(b) ☑ the United States Equal Employment Opportunity Commission has issued

a *Notice of Right to Sue*, which was received by the plaintiff on

(month)____December____ (day)___15____ (year)___2024____ a copy of which

*Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only*

*those that apply*]:

(a)    ☐  Age (Age Discrimination Employment Act).

(b)    ☑ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

    (c)  ☑  Disability (Americans with Disabilities Act or Rehabilitation Act)

    (d)  ☐  National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

    (e)  ☑  Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

    (f)  ☐  Religion (Title VII of the Civil Rights Act of 1964)

    (g)  ☐  Sex (Title VII of the Civil Rights Act of 1964)

10.    If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12.    The defendant [*check only those that apply*]

    (a)  ☐  failed to hire the plaintiff.

    (b)  ☑  terminated the plaintiff's employment.

    (c)  ☐  failed to promote the plaintiff.

    (d)  ☐  failed to reasonably accommodate the plaintiff's religion.

    (e)  ☑  failed to reasonably accommodate the plaintiff's disabilities.

    (f)  ☑  failed to stop harassment;

    (g)  ☑  retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

    (h)  ☐  other (specify): _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

On or around September 1, me and Adolfo (Team Lead, Hispanic) had a standard weekly meeting. I used my hands as I spoke, and Adolfo grew angry and told me to stop. Adolfo then abruptly ended the meeting. Adolfo then began telling other employees that I could be terminated for insubordination out of discriminatory animus for my race by perpetuating the stereotype that African Americans are hostile and insubordinate. I escalated my concerns regarding the discriminatory treatment to Heather (Human Resources, Caucasian) and Benjamin (Department Manager, Caucasian) who failed to take proper remedial action and ratified Adolfo's behavior as "cultural differences."

After escalating my concerns about Adolfo's discriminatory harassment, Adolfo began subjecting me to increased scrutiny out of retaliatory animus. For example, Adolfo suddenly began referring to his weekly one on one meetings with me as, "performance-based meetings" to publicly humiliate me and create the façade of performance issues despite the fact that my performance was strong, and the meetings were standar

13.    The facts supporting the plaintiff's claim of discrimination are as follows:

This termination was clearly discriminatory and retaliatory. First, Arrive's inability to cite any specific attendance issues is evidence of pretext. Further, Arrive had never made any mention of alleged attendance issues before my disability related protected activity, further demonstrating that this termination was pretextual. Additionally, as my requested absences were disability related and protected leave eligible, Arrive blatantly refused to reasonably accommodate me or otherwise engage in the interactive process, and terminated me out of discriminatory and retaliatory animus. Finally, the temporal proximity between my request for reasonable accommodations and intermittent protected leave and my sudden termination, combined with the disparate treatment as compared to my non-disabled and Caucasian counterparts, further demonstrates that Arrive terminated me out of discriminatory and retaliatory animus for my race, disability, and related protected activit

14.    **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.    The plaintiff demands that the case be tried by a jury. ☑ Yes ☐ No

16.    THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a)    ☐ Direct the defendant to hire the plaintiff.

(b)    ☑ Direct the defendant to re-employ the plaintiff.

(c)    ☐ Direct the defendant to promote the plaintiff.

(d)    ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e)    ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f)    ☑ Direct the defendant to (specify): _I would like to compensated for my pain and suffering_

_I would also like two year salary as it took me two years to find employment_

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g)  ☑ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h)  ☑ Grant such other relief as the Court may find appropriate.

_____
(Plaintiff's signature)

_____Nikole Grady_____
(Plaintiff's name)

_____4161 South Drexel Blvd apt 203_____
(Plaintiff's street address)

(City)_____Chicago_____(State)_____IL_____(ZIP)_____60653_____

(Plaintiff's telephone number) (_312_) – _____962-9575_____

Date:  _____2-12-24_____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

EXHIBIT A OF COMPLAINT

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| [X] FEPA | 440-2023-02022 |
| [X] EEOC | |

**Illinois Department of Human Rights** and EEOC

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Nikole Grady | (312) 962-9575 | 10/04/1983 |

Street Address                    City, State and ZIP Code

43 E Garfield Blvd #2, Chicago, IL 60637

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Arrive Logistics | 15+ | |

Street Address                    City, State and ZIP Code

43 E Garfield Blvd #2, Chicago, IL 60637 (Worked remote)
7701 Metropolis Dr Building 15, Austin, TX 78744 (Corporate)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                    City, State and ZIP Code

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest          Latest |
| [X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN | 08/08/2021       10/04/2022 |
| [X] RETALIATION  [ ] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION | |
| [ ] OTHER (Specify) | [X] CONTINUING ACTION |

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

**Statement of Harm:** Arrive Logistics ("Arrive") discriminated against me on the basis of my race (African American) and disability (bipolar disorder and anxiety).

On or around September 1, me and Adolfo (Team Lead, Hispanic) had a standard weekly meeting. I used my hands as I spoke, and Adolfo grew angry and told me to stop. Adolfo then abruptly ended the meeting. Adolfo then began telling other employees that I could be terminated for insubordination out of discriminatory animus for my race by perpetuating the stereotype that African Americans are hostile and insubordinate. I escalated my concerns regarding the discriminatory treatment to Heather (Human Resources, Caucasian) and Benjamin (Department Manager, Caucasian) who failed to take proper remedial action and ratified Adolfo's behavior as "cultural differences."

After escalating my concerns about Adolfo's discriminatory harassment, Adolfo began subjecting me to increased scrutiny out of retaliatory animus. For example, Adolfo suddenly began referring to his weekly one on one meetings with me as, "performance-based meetings" to publicly humiliate me and create the façade of performance issues despite the fact that my performance was strong, and the meetings were standard practice.

**Continued on page 2**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 12 / 07 / 2022 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |
| Date          Charging Party Signature | |

Doc ID: 4ef073678b2b269ffaedc740fc2fa826c9b72000

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA [X] EEOC | |

| Illinois Department of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**Continued from page 1**

Adolfo did not do this to any of my non-African American counterparts, demonstrating a discriminatory animus toward me on the basis of my race. I again escalated my concerns regarding the continued discriminatory and retaliatory harassment to Benjamin, but Arrive failed to take proper remedial action.

Later that month, the discriminatory work environment had caused a flare in my disability. I then contacted Heather and requested the reasonable accommodation of leaving early on the days of October 1 and October 4. Upon learning of my request for the reasonable accommodation of time off for my disability, Adolfo flatly denied my request, refusing to reasonably accommodate me or otherwise engage in the interactive process, under the pretext that I needed to provide 10 days' notice before requesting time off. By contrast, Cassie (Caucasian, non-disabled) had been able to request days off with only two days' notice without any issue. Again, none of my non-African American and/or non-disabled counterparts were subject to this level of increased scrutiny. Clearly, this disparate treatment further demonstrates a discriminatory animus against me on the basis of my race and disability.

On October 3, I emailed Heather and requested paperwork to apply for intermittent protected medica leave. Heather never provided the paperwork to me. The next day, Arrive suddenly terminated me, citing attendance issues.

This termination was clearly discriminatory and retaliatory. First, Arrive's inability to cite any specific attendance issues is evidence of pretext. Further, Arrive had never made any mention of alleged attendance issues before my disability related protected activity, further demonstrating that this termination was pretextual. Additionally, as my requested absences were disability related and protected leave eligible, Arrive blatantly refused to reasonably accommodate me or otherwise engage in the interactive process, and terminated me out of discriminatory and retaliatory animus. Finally, the temporal proximity between my request for reasonable accommodations and intermittent protected leave and my sudden termination, combined with the disparate treatment as compared to my non-disabled and Caucasian counterparts, further demonstrates that Arrive terminated me out of discriminatory and retaliatory animus for my race, disability, and related protected activity.

A person with a disability is defined as:

1. A person with a physical or mental impairment that substantially limits one or more major life activities; or
2. A person with a record of such a physical or mental impairment; or
3. A person who is regarded as having such an impairment.

I qualify as a person with a disability as defined by one or more of the above.

**Statement of Discrimination:** I believe I have been discriminated against because of my race and disability in violation of Title VII of the Civil Rights Act of 1964, Title I of the Americans with Disabilities Act of 1990, and the Illinois Human Rights Act.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 12 / 07 / 2022 *Date*     *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Doc ID: 4ef073678b2b269ffaedc740fc2fa826c9b72000

EXHIBIT B TO COMPLAINT

# Holland & Knight

One Arts Plaza | 1722 Routh Street, Suite 1500 | Dallas, TX 75201-2532 | T 214.964.9500 | F 214.964.9501
Holland & Knight LLP | www.hklaw.com

J. Meghan McCaig
meghan.mccaig@hklaw.com
(214) 969-1172

Board Certified - Labor & Employment Law
Texas Board of Legal Specialization

January 20, 2023

**Via Online Portal**

Mr. Jose Romo
U.S. Equal Employment Opportunity Commission
Chicago District Office
230 S. Dearborn Street
Chicago, Illinois 60604
jose.romo@eeoc.gov

     Re:   *Grady v. Arrive Logistics*,[1] Charge No. 440-2023-02022

Dear Mr. Romo:

     This letter constitutes the position statement of DM Trans, LLC d/b/a Arrive Logistics ("Arrive") in response to the charge of discrimination filed by Nikole Grady.[2]

## I.    STATEMENT OF POSITION

**A.    The Charge**

     In her charge, Grady, a former at-will Arrive employee, contends that Arrive violated Title VII of the Civil Rights Act of 1964 ("Title VII"), Title I of the Americans with Disabilities Act of 1990 (the "ADA"), and the Illinois Human Rights Act (the "IHRA") by purportedly discriminating against her because of her race and disability. She also alleges that Arrive retaliated against her by subjecting her to increased scrutiny and terminating her employment after she complained about discrimination.

---

   [1] Grady identifies the respondent as "Arrive Logistics."  Arrive's full legal name is DM Trans, LLC d/b/a Arrive Logistics.

   [2] Arrive submits this position statement solely for informational purposes to assist the EEOC in investigating Grady's charge of discrimination. Arrive reserves the right upon further investigation to submit additional information at any time regarding the allegations contained in the charge that may add to or modify the information provided below. Finally, this position statement shall not be construed in any matter to preclude Arrive from asserting any legal defense, theory, or facts in opposition to the allegations in the charge, either before this forum or in any other administrative or judicial tribunal.

Mr. Jose Romo
January 20, 2023
Page 2

Arrive categorically denies Grady's allegations. Among other reasons and as explained below, Grady's discrimination and retaliation claims fail because Arrive terminated her employment for legitimate business reasons because of her repeated attendance issues and non-compliance with Arrive's policies. Accordingly, Grady's claims lack merit and should promptly be dismissed.

**B.**     **Arrive**

Arrive is a freight brokerage company that serves as an intermediary between shippers and carriers. Arrive has been—and continues to be—deeply committed to policies and practices that make it an equal opportunity employer. To confirm its commitment, Arrive's Equal Employment Opportunity policy specifically prohibits discrimination against employees based upon race, physical or mental disability, and all other characteristics and activities protected under applicable law. In addition, Arrive's ADA policy provides that Arrive will reasonably accommodate qualified individuals with a disability unless doing so causes an undue hardship to others in the workplace or to Arrive. Arrive's Non-Discrimination and Anti-Harassment policy prohibits unlawful harassment of any kind and specifies the method of complaining about unlawful harassment and discrimination. Arrive's employee handbook further provides that retaliation against an employee who has engaged in protected activity is strictly prohibited.[3]

Arrive provides employees with a number of benefits, including paid sick leave and paid vacation ("PTO"). Employees are required to request PTO at least two weeks in advance, unless otherwise approved by management. Sick time may be used for personal illness, medical appointments, or to care for an immediate family member. If employees need to use paid sick leave, they are to notify their manager prior to their scheduled shift.[4] Grady acknowledged in writing her receipt of the employee handbook, which includes the policies described above, when she began her employment with Arrive.[5] Grady further acknowledged in writing her receipt of Arrive's Code of Conduct, which prohibits, among other things, "[e]xcessive absenteeism or unacceptable patterns of absenteeism," as well as arriving to work late.[6]

---

[3] Excerpts from the Arrive employee handbook in effect at the time of Grady's employment containing the EEO, non-discrimination, non-harassment, and anti-retaliation policies described are attached as Exhibit A.

[4] Excerpts from the Arrive employee handbook in effect at the time of Grady's employment containing the PTO and sick-leave policies described are attached as Exhibit B.

[5] A copy of Grady's handbook acknowledgement is attached as Exhibit C.

[6] A copy of Grady's Code of Conduct acknowledgement is attached as Exhibit D.

Mr. Jose Romo
January 20, 2023
Page 3

## C.  Grady's Employment History with Arrive

Arrive hired Grady on an at-will basis on August 16, 2021 as a Second Shift Account Coordinator.  Following a number of attendance issues, Grady's then-manager counseled her in April 2022 regarding her attendance and made Arrive's attendance expectations clear:



Several months later, in August 2022, Grady called in sick to miss partial work days on three occasions (August 8, 16, and 26, 2022).  After a meeting with Adolfo Bula—Grady's new manager—on August 18, 2022, Grady reported to Bula and Bula's supervisor—Benjamin Draper—that she felt that Bula was attempting to get her "fired":



After Grady accused Bula of harassment, Bula informed Grady that she could go to Human Resources and also informed Heather Heintz from Arrive's Human Resources Department about Grady's allegations.  Heintz spoke with all parties involved and determined

Mr. Jose Romo
January 20, 2023
Page 4

that there was no indication that Bula was harassing Grady or discriminating against her based on race.

In early September 2022, Grady's attendance issues again resurfaced. On September 8, 2022, Heintz had a conversation with Grady about attendance. After continuing to have attendance issues, including an early departure on September 19, 2022 for a purported family emergency and a late arrival on September 20, 2022 after Grady admitted to oversleeping, Heintz again counseled Grady on September 23, 2022 to remind her to follow Arrive's policies by requesting PTO at least two weeks in advance, giving advanced notice for late arrivals, and not using her lunch to clock out early for the day.



Just one week later, on September 30, 2022, Grady took half of a day off without obtaining approval from her manager or providing the required two weeks' notice.

On October 3, 2022, Grady was late to work with no communication. That day, Bula asked Grady why she had requested a sick day on October 4, 2022. Bula wanted to ensure that Grady was using the sick leave as outlined in the policy because there was a new system in place that the company was stress-testing, and Bula wanted all employees present if possible. Grady admitted that her request for time off was <u>not</u> for a medical purpose. At no point did Grady inform Heintz or Human Resources that she had a disability or needed an accommodation; in fact, she said precisely the opposite:

Mr. Jose Romo
January 20, 2023
Page 5



Grady had not requested the leave two weeks in advance. Further, Arrive needed her at work due to business needs, and the leave did not qualify as sick leave. Thus, Arrive denied her requested time off. Despite the denial of her request, on October 4, 2022, Grady informed Draper—Bula's supervisor—that she was going to leave early that day using sick leave (despite having admitted that she simply intended to take pre-planned time off).

Due to Grady's repeated failure to comply with its policies, Arrive terminated Grady's employment on October 4, 2022. Grady filed for unemployment, and the Illinois Department of Employment Security denied her request, finding that the claimant was "discharged from [Arrive] for violation of the attendance policies of the employer."[7] Grady submitted her charge of discrimination on December 7, 2022.

**D.      Response to Grady's Allegations**

In her charge, Grady claims that Arrive discriminated against her in violation of Title VII and the IHRA on account of her race and disability and then retaliated against her when she complained about purported harassment. Specifically, Grady contends that Bula discriminated against her based on race by "growing angry with [her] and t[elling her] to stop" using her hands when she spoke, telling other employees that Grady could be terminated for insubordination, referring to his weekly meetings with Grady as performance-based meetings. Even if true, none of these actions constitutes actionable racial harassment or discrimination based on race.

Grady also claims that Arrive approved time-off requests by a Caucasian employee with only two days' notice, while requiring ten days' notice from Grady. Managers have discretion to approve time-off requests with less than ten days' notice, and Grady had herself taken time off without ten days' notice on a number of occasions. Grady's time-off request for October 4, 2022

---

[7] A true and correct copy of the Illinois Department of Employment Security's determination is attached as <u>Exhibit E</u>.

Mr. Jose Romo
January 20, 2023
Page 6

was denied because there was a business need for her to be present at work, she failed to give the required notice, and she admitted that she was not using sick leave for a medical purpose.

In addition, although Grady contends that Arrive discriminated against her due to her purported disability, Grady failed to communicate to Arrive that she had a disability. Her contention that Arrive somehow discriminated against her based on a disability it did not know she had is without merit.

Further, the only adverse employment action Grady suffered—the termination of her employment—was based on legitimate, non-discriminatory reasons that had nothing to do with her race or purported (unknown) disability. As explained above, Grady had numerous attendance issues, she repeatedly failed to follow Arrive's policies, and she had to be regularly coached and counseled. Because Grady cannot rebut these problems and show that they were false, her discrimination claims are without merit.

Grady also alleges that Arrive retaliated against her for complaining about purported harassment. Her retaliation claim fails because Arrive terminated her employment for legitimate, non-retaliatory reasons, as explained above. Grady repeatedly did not comply with Arrive's policies and was counseled about her non-compliance. Perhaps realizing that the writing was on the wall, she complained about Bula. That complaint, however, played no role in the decision to terminate Grady's employment. Instead, Grady's repeated attendance issues and refusal to comply with Arrive's PTO policy caused Arrive to terminate her employment. Because Grady cannot establish that Arrive's reasons for terminating her employment were false or pretextual, her retaliation claim cannot succeed.

## II. CONCLUSION

Grady's allegations against Arrive are completely without merit. For these reasons, Grady's charge does not merit further consideration and should be promptly dismissed with a "no probable cause" determination. Please contact me if you have any questions or need additional information.

Sincerely,

HOLLAND & KNIGHT LLP

By: J. Meghan McCaig

JMM
Attachments

# EXHIBIT A

DocuSign Envelope ID: E3D164B3-937D-4DCA-84DA-20F7FF121D5D

# Employee Handbook 2021



**Chapter 1: Welcome to Arrive Logistics**
1.01 – A Note From Our CEO
1.02 – Who We Are
1.03 – A Word About This Handbook
1.04 – Core Beliefs
1.05 – Arrive Philanthropy
1.06 – Resources

**Chapter 2: Working At Arrive**
2.01 – Employment At-Will
2.02 – Training
2.03 – Equal Employment Opportunity (EEO)
2.04 – Americans With Disabilities Act and Americans with Disabilities Amendments Act
2.05 – Employment Verification Policy; Employment Eligibility Verification Form (I-9);
       Background Checks
2.06 – Open Door Policy
2.07 – Opportunity and Internal Transfers

**Chapter 3: Professional Conduct**
3.01 – Prohibited Conduct and Work Rules
3.02 – Social Media at Work
3.03 – Cell Phone Use
3.04 – Workplace Recordings Prohibited
3.05 – Teleworking
3.06 – Privacy Internet/Company Usage
3.07 – Security of Electronic Devices
3.08 – Electronic Devices: Bring Your Own Device (BYOD) Policy
3.09 – Travel Guidelines
3.10 – Dress and Attire Expectations
3.11 – Professionalism
3.12 – Tobacco Use at Work
3.13 – Drug and Alcohol Policy
3.14 – Investigations Involving Employee Property In The Workplace

**Chapter 4: Workplace Policies and Procedures**
4.01 – Conflict Of Interest/Code Of Ethics
4.02 – Non-Discrimination and Anti-Harassment
4.03 – Workplace Investigations
4.04 – Disciplinary Procedures
4.05 – Workplace Violence
4.06 – Safety and Worker's Compensation
4.07 – Light Duty and Reasonable Accommodation
4.08 – Lactation Policy
4.09 – Company and Business Events
4.10 – Emergency Protocol
4.11 – Emergency Closings

**Chapter 5: Pay Practices**
5.01 — Fair Labor Standards Act
5.02 — Employee Classification
5.03 — Performance Reviews and Merit Increases
5.04 — Promotions and Advancements
5.05 — Payment of Wages
5.06 — Paycheck Deductions
5.07 — Overtime (Non-Exempt Employees)
5.08 — Final Pay at Separation
5.09 — Employee Timekeeping
5.10 — Commissions
5.11 — Pay Advances
5.12 — Meals/Breaks
5.13 — Separation from the Company
5.14 — Expense Reimbursement Policy

**Chapter 6: Time Off and Leaves Of Absence**
6.01 — Paid Time Off, Sick and Other Time Away
6.02 — FMLA Leave Procedure
6.03 — Types of Leaves of Absence

**Chapter 7: Benefits and Wellness**
7.01 — Employee Benefits
7.02 — Holidays

**Employee Handbook Acknowledgement Form**
**Wage Deduction Authorization From**
**Arbitration Program**

# 2.01 | Employment At-Will

Arrive Logistics hires all employees on an at-will basis. At-will employment allows Arrive Logistics and each of its employees the right to terminate the employment relationship at-will, at any time, with or without cause or notice.

Although other terms and conditions of employment may change, this at-will employment relationship will remain in effect throughout your employment with the company. All exceptions to this at-will policy must be written and signed by the CEO. This at-will employment status may not be modified by any oral or implied agreement.

# 2.02 | Training

Whether you have worked in logistics in the past or you are new to the industry, you may have the opportunity to take part in on-site training to help point you in the right direction. Our strategy is simple:

- Hire good people
- Train them with best-in-class people and content
- Identify individual strengths
- Listen to your ideas and feedback
- Find ways to leverage the talent within Arrive to grow our brand and offerings

We encourage you to push yourself to find what you're passionate about. If you think of a way to make things more efficient or work better, let us know. Our management team has an open door policy, especially when it comes to sharing new ideas and feedback.

Don't be shy!  Speak up, be heard and make a difference! E-mail peopleops@arrivelogistics.com with your ideas today!

# 2.03 | Equal Employment Opportunity (EEO)

Arrive Logistics is an equal opportunity employer. It is the policy of Arrive Logistics to prohibit discrimination against employees based on race, color, sex, national origin, ancestry, religion, age, pregnancy and childbirth, physical or mental disability, veteran status, genetic characteristics, sexual orientation or any other classification protected by federal, state or local laws. Arrive Logistics complies with applicable state and local laws governing nondiscrimination in employment in every location in which the company is facilitated. This policy is in respect to everything included but not limited to: employment, recruiting, hiring, treatment on the job,

DocuSign Envelope ID: E3D164B3-937D-4DCA-84DA-2057EF121D5D

compensation, benefits, promotions, transfers, training, layoffs, discipline and termination of employment.

# 2.04 | Americans With Disabilities Act (ADA) and Americans with Disabilities Amendments Act (ADAA)

The Americans with Disabilities Act (ADA) and the Americans with Disabilities Amendments Act (ADAA) are federal laws that prohibit employers with 15 or more employees from discriminating against applicants and individuals with disabilities and that when needed provide reasonable accommodations to applicants and employees who are qualified for a job, with or without reasonable accommodations, so that they may perform the essential job duties of the position.

It is our policy to comply with all federal and state laws concerning the employment of persons with disabilities and to act in accordance with regulations and guidance issued by the Equal Employment Opportunity Commission (EEOC). Furthermore, it is our company policy not to discriminate against qualified individuals with disabilities regarding application procedures, hiring, advancement, discharge, compensation, training or other terms, conditions and privileges of employment.

The company will reasonably accommodate qualified individuals with a disability so that they can perform the essential functions of a job unless doing so causes an undue hardship to others in the workplace or to Arrive Logistics.

# 2.05 | Employment Verification Policy; Employment Eligibility Verification Form (I-9); Background Checks

### Employment Verification Policy

Any inquiries regarding current or former employees must be directed to the WageVerify at wageverify.com or 888-777-2222. WageVerify will only verify an employee's name, job title and dates of employment. Arrive will not release any other information, unless a current or former employee submits a written, signed authorization releasing Arrive from any liability or unless the company is required by law to supply information.

DocuSign Envelope ID: E3D164B3-937D-4DCA-84DA-20E7EE121D5D

- The company adheres to, and all employees are expected to adhere to, all applicable human rights and labor and employment laws and regulations.

At Arrive we value the relationship you have with your manager. Your manager is most familiar with you and your job and in many cases will be able to resolve your issue or answer your question immediately. Therefore, you are encouraged to speak with him/her about your concerns. However, there will be times in which it may be more appropriate for you to contact a third-party resource. If you have any legal or ethical concerns relating to Arrive's conflict of interest policies and/or code of conduct, you may contact the Arrive Integrity Hotline by phone at 855-927-4606 or by e-mail at integrity@arrivelogistics.com.

# 4.02 | Non-Discrimination and Anti-Harassment

## Anti-Harassment Policy

The company seeks to make its workplace as pleasant and professional as possible by creating and maintaining a work environment that is free from all forms of unlawful harassment, whether sexual in nature or not. The company will not tolerate any form of unlawful harassment or any other improper conduct that has the purpose or effect of interfering with an individual's work performance or that creates an intimidating, hostile or offensive work environment. Unlawful harassment of any kind is strictly prohibited and will not be tolerated in or outside of the workplace.

The company's policy against unlawful harassment, discrimination and retaliation applies to all employees, including supervisors and managers. The company prohibits managers, supervisors and employees from harassing co-workers as well as the company's clients, vendors, suppliers, independent contractors and others doing business with the company. Any such harassment will subject an employee to disciplinary action, up to and including immediate termination. The company likewise prohibits its clients, vendors, suppliers, independent contractors and others doing business with the company from harassing, discriminating or retaliating against our managers, supervisors and employees.

The company takes allegations of harassment seriously, and will take all steps reasonably required to prevent, investigate and promptly correct any harassment or other improper conduct in the workplace or in settings in which employees may find themselves in connection with their Employment. Violations of this policy will result in disciplinary action up to and including termination of employment.

## EEO and Harassment Training

Arrive requires that all employees receive sexual harassment and anti-discrimination training on an annual basis. Failure to attend the training will result in discipline up to and including termination.

## Reporting Discrimination and Harassment

All employees of the company have a responsibility to come forward and report offensive, harassing, discriminatory or other improper behavior they believe may constitute discrimination and/or harassment. Most incidents of discrimination and harassment can be effectively addressed with a minimum of disruption to the affected employee and the company if promptly reported. Failure to report discrimination and harassment or other improper conduct in a timely manner may make it difficult for the company to take effective corrective action.

If you believe you or another employee has been subjected to discrimination and/or harassment, you may file a complaint with the Vice President of People Operations. It is the responsibility of the employee to report discrimination and harassment as soon as it occurs so that the company can investigate and respond appropriately. Any discrimination or harassment must be reported to the Employee Relations team or member of People Operations as soon as feasible in order to investigate and respond appropriately.

Supervisors who receive any complaint of harassment, discrimination or retaliation must promptly report such complaint to the the Vice President of People Operations so that the company may resolve the complaint appropriately.

If at any time you feel your complaint has not received prompt and adequate attention, you should immediately contact the Integrity Hotline at 855-927-4606 or integrity@arrivelogistics.com. There is an option that allows you to remain anonymous if you so desire. Whichever route you choose, Arrive prohibits retaliation against you if you make a report in good faith. While it may take a short time for the company to review and investigate your concerns, feel free at any time to inquire about the status of your concerns by contacting the person receiving your complaint.

# 4.03 | Workplace Investigations

## Investigation of Reports of Discrimination and Harassment

When an employee complains about discrimination, harassment or other improper conduct the company will promptly and thoroughly investigate the employee's concerns. While it will be necessary to discuss the employee's concerns with the alleged offender and possibly other employees, the company will attempt to conduct the investigation as confidentially as possible. Upon completion of the investigation, the company will inform the person filing the complaint and the alleged offender of the results of the investigation and, to the extent appropriate, any remedial action to be taken.

If it is determined that the terms of the company's equal employment Opportunity, non-harassment and/or disability policies have been violated, the company will take reasonable steps designed to prevent reoccurrence of the offending conduct. Any employee who is determined, after an investigation, to have engaged in discrimination and/or harassment in violation of this policy will be subject to appropriate discipline, up to and including termination of employment.

If it is determined, after investigating any complaint of harassment or discrimination, that the complaint is not made in good faith, or that an employee has provided false information regarding the complaint, disciplinary action may be taken against the individual who filed the complaint or gave false information.

The company recognizes that in some cases, despite thorough investigation, it may be impossible to determine whether the alleged violations of the equal employment opportunity, non-harassment and/or disability policies have, in fact, occurred. In such cases, the company may take action designed to reinforce the effectiveness of these policies and to prevent future violations.

Once the company has addressed concerns raised with respect to discrimination, harassment or other improper conduct, it will assume that the problem is not continuing in nature unless it is informed otherwise. If you are again the subject of discrimination or harassment, you must immediately report this reoccurrence to the Vice President of People Operations. Arrive will conduct a prompt and thorough investigation.

## Retaliation Prohibited

Any retaliation against an individual who has complained about or who has participated in an investigation of alleged discrimination or harassment or other improper conduct is strictly prohibited. If you feel that you are being retaliated against in violation of this policy, immediately contact the Vice President of People Operations and/or the Integrity Hotline, and your concerns will be promptly and thoroughly reviewed.

# 4.04 | Disciplinary Procedures

## Prohibited Conduct

The company's goal is to avoid the risk of unlawful harassment (including sexual harassment) by prohibiting any conduct that may possibly be construed as unlawful harassment, whether it is sexual in nature or not. To achieve this goal, the following conduct is prohibited, regardless of whether it is sufficiently severe or widespread to be unlawful:

- All sexual advances, or propositions – whether they involve physical touching or not.
- Sexually oriented, suggestive, obscene or insulting comments, language or jokes, written or oral references to sexual conduct, comments about an individual's body, sexual activities, gender identity or gender expression, experiences, deficiencies or preferences.
- Displaying or possessing in the workplace sexually suggestive, revealing, pornographic and/or derogatory objects, pictures, graffiti or cartoons.
- Sending or posting sexually-related messages, videos or messages via text, instant messaging or social media;
- Physical horseplay, practical joking, leering, unnecessary touching (such as patting, pinching or intentional brushing against another's body), blocking movement or sexual gestures.
- Threats or promises of preferential treatment designed to induce submission to or toleration of any of the above conduct.

- Disparaging remarks, epithets, graffiti or other offensive or inflammatory conduct based on an individual's race, religion, national origin, age, disability, genetic information or any other protected classification.
- Any other conduct, which if unwelcome and sufficiently severe and widespread, may constitute unlawful harassment.

The company employs professional people and expects all employees to know what conduct is, and what is not, appropriate for the workplace. If you have any questions about what constitutes harassing behavior, you may contact a member of the People Operations department.

# 4.05 | Workplace Violence

The company is committed to preventing workplace violence and to maintaining a safe work environment. The company has adopted the following guidelines to deal with threats of violence or actual incidents of violence that may occur during business hours or on its premises.

- All employees, visitors, vendors, customers, etc. should be treated with courtesy and respect always. Employees are expected to refrain from fighting, "horseplay" or any other conduct that may be dangerous to others.
- To provide for the safety and security of employees and the facilities, only authorized visitors are allowed in the workplace. All visitors must enter the premises at the main entrance during normal business hours and check-in.
- Conduct that threatens, intimidates or coerces another employee, customer, vendor or business associate will not be tolerated. The company's resources may not be used to threaten, stalk or harass anyone at the workplace or outside of the workplace.
- Employees are encouraged to report safety concerns regarding intimate partner violence. The company considers threats coming from an abusive personal relationship as it does other forms of violence. The company will not retaliate against employees for making good-faith reports.
- All direct or indirect threats of violence, incidents of actual violence and suspicious individuals or activities should be reported as soon as possible to the employee's immediate supervisor, The People Operations department or any member of the management team. This includes threats by employees, as well as threats by customers, vendors, solicitors or other members of the public. When reporting a threat of violence, employees should be specific and provide as much detail as possible.
- Employees may not bring firearms, weapons or explosives, concealed or otherwise, on the company premises, even if the employee has a legal concealed weapon permit. In states that require by law that employers permit employees to store weapons in locked vehicles, employees may lawfully do so, but only after registering such vehicles and weapons with the People Operations department. Employees may not remove such weapons from the locked vehicle, carry them, brandish them, use them or threaten or otherwise indicate that the employee will do any of the foregoing.
- To protect the property and to ensure the safety of all employees, customers and the company, the company reserves the right to conduct personal searches consistent with state law, and to inspect any packages, parcels, purses, handbags, briefcases, lunch boxes or any other possessions or articles, including electronic devices, carried to and

# EXHIBIT B

DocuSign Envelope ID: F3D164B3-937D-4DCA-84DA-20E7FF121D5D

# Employee Handbook 2021



**Chapter 1: Welcome to Arrive Logistics**
1.01 – A Note From Our CEO
1.02 – Who We Are
1.03 – A Word About This Handbook
1.04 – Core Beliefs
1.05 – Arrive Philanthropy
1.06 – Resources

**Chapter 2: Working At Arrive**
2.01 – Employment At-Will
2.02 – Training
2.03 – Equal Employment Opportunity (EEO)
2.04 – Americans With Disabilities Act and Americans with Disabilities Amendments Act
2.05 – Employment Verification Policy; Employment Eligibility Verification Form (I-9); Background Checks
2.06 – Open Door Policy
2.07 – Opportunity and Internal Transfers

**Chapter 3: Professional Conduct**
3.01 – Prohibited Conduct and Work Rules
3.02 – Social Media at Work
3.03 – Cell Phone Use
3.04 – Workplace Recordings Prohibited
3.05 – Teleworking
3.06 – Privacy Internet/Company Usage
3.07 – Security of Electronic Devices
3.08 – Electronic Devices: Bring Your Own Device (BYOD) Policy
3.09 – Travel Guidelines
3.10 – Dress and Attire Expectations
3.11 – Professionalism
3.12 – Tobacco Use at Work
3.13 – Drug and Alcohol Policy
3.14 – Investigations Involving Employee Property In The Workplace

**Chapter 4: Workplace Policies and Procedures**
4.01 – Conflict Of Interest/Code Of Ethics
4.02 – Non-Discrimination and Anti-Harassment
4.03 – Workplace Investigations
4.04 – Disciplinary Procedures
4.05 – Workplace Violence
4.06 – Safety and Worker's Compensation
4.07 – Light Duty and Reasonable Accommodation
4.08 – Lactation Policy
4.09 – Company and Business Events
4.10 – Emergency Protocol
4.11 – Emergency Closings

**Chapter 5: Pay Practices**
5.01 – Fair Labor Standards Act
5.02 – Employee Classification
5.03 – Performance Reviews and Merit Increases
5.04 – Promotions and Advancements
5.05 – Payment of Wages
5.06 – Paycheck Deductions
5.07 – Overtime (Non-Exempt Employees)
5.08 – Final Pay at Separation
5.09 – Employee Timekeeping
5.10 – Commissions
5.11 – Pay Advances
5.12 – Meals/Breaks
5.13 – Separation from the Company
5.14 – Expense Reimbursement Policy

**Chapter 6: Time Off and Leaves Of Absence**
6.01 – Paid Time Off, Sick and Other Time Away
6.02 – FMLA Leave Procedure
6.03 – Types of Leaves of Absence

**Chapter 7: Benefits and Wellness**
7.01 – Employee Benefits
7.02 – Holidays

**Employee Handbook Acknowledgement Form**
**Wage Deduction Authorization From**
**Arbitration Program**

# 6.01 | Paid Time Off, Sick and Other Time Away

## Paid Time Off

Arrive recognizes the importance of time off from work in order to provide much needed rest and relaxation to employees. Arrive prides itself on providing a competitive vacation time policy in order to ensure all employees have the ability to create a balance between their work and personal lives. All full-time regular employees are eligible to participate in the company's vacation time. All temporary employees will be authorized to take unpaid time off when approved in advance by management.

**Full-time, exempt employees and non-exempt employees who work an 8-hour or 10-hour schedule are eligible to accrue paid time off according to the following schedule:**

| Accrual Tier | Tenure and Seniority Tier | Vacation Days | Vacation Hours Accrued Per Pay Period |
|---|---|---|---|
| Tier 1 | 0 - 12 Months | 7 days = 56 hrs | 2.154 hours |
| *Upon completion of the training period - Biz Dev and Carrier Sales Representatives are awarded (1) LFG day | | | |
| Tier 2 | 13 Months - 24 Months | 10 days = 80 hrs | 3.077 hours |
| Tier 3 | 25 months - 36 months | 13 days = 104 hrs | 4.0 hours |
| Tier 4 | 37 months - 48 months | 15 days = 120 hrs | 4.616 hours |
| Tier 5 | 49 + Months People Mgrs and Tech | **UNLIMITED PTO** | |

**Non-exempt sales trainees that work a 10-hour day will accrue paid time off according to the following schedule:**

| Accrual Tier | Seniority | Vacation Days | Vacation Hours Accrued Per Pay Period |
|---|---|---|---|
| Tier 1 | 0 - 12 Months | 7 days = 70 hrs | 2.697 hours |
| *Upon completion of the training period - Biz Dev and Carrier Sales Representatives are awarded (1) LFG day | | | |
| Tier 2 | 13 Months - 24 Months | 10 days = 100 hrs | 3.847 hours |

46

| Tier 3 | 25 months - 36 months | 13 days = 130 hrs | 5.0 hours |
| Tier 4 | 37 months - 48 months | 15 days = 150 hrs | 5.769 hours |
| Tier 5 | 49+ Months | **UNLIMITED PTO** | |

New employees will accrue paid vacation at the start of employment but may not take any vacation until they have completed the 30 day waiting period. Vacation time can be taken in half day or full day increments. All eligible employees are required to request time off at least 2 weeks in advance, unless otherwise approved by management. Management has the right to deny vacation requests due to business needs; however, if feasible, Arrive will try to accommodate reasonable and timely vacation requests.

On the employee's anniversary date, the employee will move up one vacation accrual tier based on their tier eligibility, and the employee's vacation accrual bank will reset. Employees will be permitted to carry-over up to 50% of their total accrued but unused vacation time per year. However, the carry-over vacation time must be used the following year as it will not continue to roll over and will be forfeited.

Generally, employees may not take paid vacation until they have earned or accrued vacation time; however, the company understands the need to be flexible at times and reserves the right to allow employees to borrow/use time that has not yet been accrued. The company allows for up to two days of borrowed time which has been pre-approved by your manager and People Operations.

Employees whose employment terminates for any reason will not be paid for any unused vacation time except where required by law. If an employee resigns, any previously approved paid time off requests or future desired paid time off requests will be approved at the discretion of the business. In general, if an employee resigns and has approved paid time off during their notice period, their last day worked prior to their approved paid time off will become their last day of employment.  Paid time off cannot be used to extend a notice period. In addition, an employee cannot substitute paid time off as the last day worked. Any negative PTO balances identified at termination or year-end must be repaid to the company according to state law. Unused carryover PTO will not be paid out in the event of separation. Employees will not accrue PTO while on a leave of absence. The company may require employees to apply PTO in certain circumstances including but not limited to violations of Arrive's attendance policy and during unpaid or partially paid leaves where state law permits.

## Sick Time

Arrive acknowledges that employees will need time off from work occasionally to address their well-being. Arrive provides all regular full-time employees with paid sick days. Accrual begins at the start of employment, and employees are eligible to use sick time once they have accrued the time. Earned sick time can be used for personal illness, well-care and medical, dental and vision appointments. It may also be used for the illness or care of an immediate family member.

Employees may not take paid sick days until they have accrued paid sick time. The company does not allow employees to borrow against or use paid sick time that has not been accrued.

**Employees will earn sick time based on the following accrual schedules:**

| Work Schedule/ Classification | Per Pay Period Accrual | Up to Max Sick Days /Hours Per Year |
|---|---|---|
| 8 Hour Workday *Exempt and Non-Exempt* | 1.538 hours | 5 days/40 hours |
| 10 Hour Workday *Sales Trainees Only* | 1.923 hours | 5 days/50 hours |

## Using Sick Time

In the event that an employee needs to use sick time, an employee must notify their manager by phone call at least thirty (30) minutes before the employee's scheduled shift. Text messages and emails are not considered an approved form of communication and will not be accepted. If the employee is out sick for the full work day, they will need to check in with their manager no later than 3:00 PM and provide an update on their status for the following day. Unless otherwise prohibited by state law, a doctor's note will be required for return to work after absences longer than 2 consecutive days.

## Vacation/Sick Time Bonus Plan for Full Commission Carrier Sales Representatives

In order to promote the well-being and work life balance for those employees who are solely compensated in commissions earned, the company has established a time off bonus plan. All 100% commissioned Carrier Sales Representatives that do not have dedicated operations support are eligible to participate in this time off benefit.

### General Guidelines:

A Carrier Sales Rep must be out 3 consecutive days in order to be eligible for the bonus. For each full day taken for sick or vacation time, an eligible Carrier Sales Rep will be eligible to earn a $200.00 bonus to offset the loss of commissions earned.

The maximum number of sick days that will be eligible for a bonus is based on the number of days the Rep has accrued and is available to use up to a maximum of 5 days. The maximum number of vacation days that will be eligible for a bonus is based on the Rep's current vacation plan and the number of days the Rep has accrued and is available to use up to a maximum of 15 days.

A bonus will only be paid for time-off taken in full day increments. Half days will not be prorated. If 2 half days are taken in a given pay period, they will not be combined and the bonus will not be paid. Vacation and sick time must be approved by managers in Paylocity in order for a bonus to be awarded. Bonuses will be paid during the pay period in which the

# EXHIBIT C

## Consideration

Your decision to accept employment or to continue employment with the Company constitutes your agreement to be bound by this Agreement. Likewise, the Company agrees to be bound by this Agreement. This mutual agreement to arbitrate Claims means that both you and the Company are required to use arbitration as the only means of resolving the Claims covered by this Agreement (unless the claims are excluded) and to forgo any right either you or the Company may have to a trial before a court or jury or government agency (except as otherwise stated herein) on issues covered by this Agreement. The mutual promises by you and by the Company to arbitrate legal claims, rather than litigate them before courts or other bodies, provide consideration for each other.

THE PROVISIONS OF THIS PROGRAM DO NOT MODIFY THE AT-WILL STATUS OF EMPLOYEES.

I HAVE READ AND VOLUNTARILY AGREE TO THE ABOVE.

*Nikole Grady*

— B1C3G7DA4O6F4E8

_____          _____
Employee's Signature                              Arrive Logistics Signature

Nikole Grady

_____          By: _____
Employee's Name (Print)                         Arrive Logistics' Name (Print)

8/11/2021

_____          _____
Date                                                      Date


71

# EXHIBIT D

## *Code Of Professional Conduct*

As an employee, it is important for you to know what personal conduct is expected of you while on the job. In most instances, your own good judgment will tell you the right thing to do.

The following examples are not intended to constitute a complete and exhaustive list of prohibited conduct. In addition, the Company reserves the right to change the examples listed below at any time without notice. While discipline for standard violations will typically follow a progressive disciplinary procedure, the Company reserves the right to implement discipline in accordance with grievousness of the violation. Violations of these or any other Company policies may subject you to disciplinary action, up to and including immediate termination:

1. Theft, fraud, embezzlement or other acts of dishonesty.

2. Any harassment of another employee (verbal, physical, or visual), including sexual harassment such as offensive gestures, unwelcome advances, jokes, touching, or comments of a sexual nature made to or about another employee, vendor or customer.

3. Obtaining employment or promotion on the basis of false or misleading information.

4. Engaging in unauthorized employment elsewhere while on paid leave or while receiving benefits related to illness, or while on an extended absence.

5. Falsifying Company documents or records, including misuse of timekeeping records, or falsely inputting payment data.

6. Insubordination, meaning refusing to follow legitimate instructions of a superior related to performance of one's job.

7. Disrupting the work environment

8. Excessive absenteeism or unacceptable patterns of absenteeism.

9. Repeatedly showing up or leaving work late.

10. Job abandonment, meaning the failure to report to work without properly notifying your boss, or leaving a job assignment prior to completion of your responsibilities.

11. Mishandling a customer's or potential customer's account. This includes improper discriminatory practices.

12. Failing to meet job responsibilities, job budget or quality requirements.

Nikole Grady

*Name of Employee*

*Signature*

8/11/2021

*Date*

# EXHIBIT E

**Illinois Department of Employment Security**

P.O. Box 19509
Springfield, IL 62794
Phone: (800) 244-5631 · TTY: (800) 244-5631
Fax: (217) 557-4913
www.ides.illinois.gov

DM TRANS LLC
CASIE MCGEE
30 S WACKER DR STE 2350
CHICAGO, IL 60606-7446

5 / 4055

| | |
|---|---|
| Date Mailed: | 10/21/2022 |
| Employer Account Number: | 4772370 |
| Claimant SSN: | xxx-xx-3247 |
| Claimant Name: | NIKOLE C. GRADY |

## Determination

The following determination has been made in connection with the claim for unemployment insurance benefits.

Issue 027 602A - Misconduct
Deny Effective 10/02/2022 - 12/31/9999
Was the claimant discharged for misconduct connected with the work? The evidence shows that the claimant was discharged from DM TRANS LLC for violation of the attendance policies of the employer. The claimant`s conduct constituted misconduct under Section 602A3 of the Illinois Unemployment Insurance Act. The claimant is ineligible for benefits from 10/02/2022 and will be determined ineligible until she meets the eligibility requirements.

You have established party status to the Representative's decision under 56 Ill. Adm. Code 2720.140

**FOR INFORMATION REGARDING YOUR RIGHTS UNDER ILLINOIS' UNEMPLOYMENT INSURANCE ACT AND THE EXACT LANGUAGE OF THE ACT AND IDES RULES, PLEASE VISIT THE AGENCY'S WEBSITE AT www.ides.illinois.gov/UIRights.**
**FOR INFORMATION ON HOW TO OBTAIN FREE LEGAL SERVICES SEE IMPORTANT NOTICE BELOW.**

If you require further details concerning the information in this letter, please contact the Agency at the phone number listed above.

Please see appeal rights listed below and additional information regarding this determination.

5020-1153

DM TRANS LLC                                              10/21/2022



Claimants:
(SSN ending with 0-4)
Toll-Free:        (800) 884-6591
Out of State:     (847) 991-9240
TTY:              (866) 848-5609

(SSN ending with 5-9)
Toll-Free:        (888) 430-1776
Phone:            (847) 251-1776
TTY:              (847) 251-6985

Small Employers:
If your account number for unemployment insurance ends in 0 to 9, call:
(866) 641-4288
(312) 641-6403 TTY (not toll-free)

EXHIBIT C OF COMPLAINT

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

**To:** Nikole Grady
c/o Spielberger Law Group
Gary Martoccio, Esq.
4890 W. Kennedy Blvd., Suite 950
Tampa, FL 33609

Charge No: 440-2023-02022

EEOC Representative and email:    GREGORY MUCHA
Investigator
gregory.mucha@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2023-02022.

On behalf of the Commission,

Digitally Signed By:Diane I. Smason
12/14/2023
Diane I. Smason
Acting District Director

**Cc:** DM Trans LLC d/b/a Arrive Logistics
c/o Holland & Knight
Meghan McCaig
Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2023-02022 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Diane I. Smason, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2023-02022 to the District Director at Diane I. Smason, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

***Note:*** *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EXHIBIT D OF COMPLAINT

ATTN: Grzegorz Mucha, EEOC Investigator
U.S. Equal Employment Opportunity Commission
Chicago District Office
JCK Federal Building
230 S. Dearborn St.
Suite 1866
Chicago, IL 60604

**Re: Nikole Grady v. DM Trans, LLC d/b/a Arrive Logistics**
**EEOC Charge: 440-2023-02022**

Dear Investigator Mucha,

This is a response to the Position Statement submitted by DM Trans, LLC d/b/a Arrive Logistics ("Arrive") in response to Nikole Grady's ("Ms. Grady") race and disability discrimination and retaliation claims against Arrive.

## I.     Arrive's Claims Are False and Without Merit.

Arrive's claims are nonsensical and meritless. For instance, Arrive attempts to distract from its racial discrimination by highlighting how it discriminated against Ms. Grady's disability and need for the reasonable accommodation of intermittent absences. This does not absolve Arrive from liability, but rather, it corroborates Ms. Grady's claims. Additionally, Arrive provides Ms. Grady's escalation regarding Mr. Bula's increased scrutiny and expressed intent to find ways to terminate Ms. Grady because he baselessly perceived Ms. Grady's facial expressions to be too "aggressive" out of discriminatory animus for her race in perpetuation of the derogatory racial stereotype that African Americans are aggressive. However, Arrive admits that it failed to take any remedial action.

Arrive also attempts to evade liability by feigning ignorance regarding her disability. However, that is also meritless because Ms. Grady properly informed Human Resources about her disability and requested the reasonable accommodation of intermittent absences and inquired about FMLA. Thus, Arrive knew about Ms. Grady's disability. Furthermore, Arrive claims that Ms. Grady supposedly confirmed that her October 4th absence was not for a medical reason; however, that is patently false and manipulatively inaccurate. Ms. Bula specifically asked if her absence was for a doctor's appointment. It was not for a doctor's appointment but rather for a flare in her disability as she had properly reported to Human Resources. Stating that her absence was not for a doctor's appointment is not equivalent to saying that the absence was not related to a disability.

Additionally, Ms. Grady escalated her concerns regarding Mr. Bula's line of questioning. Ms. Grady had also escalated her concerns regarding the discrimination to the Department Manager, Benjamin; however, Arrive failed to take any remedial action.

Shortly thereafter, Arrive suddenly terminated Ms. Grady under the pretext of her disability related absences. This reason is clearly discriminatory and retaliatory as her absences were for her disability and had been requested as reasonable accommodations. Furthermore, the temporal proximity between Ms. Grady's protected activity and sudden termination, combined with the expressed intent to terminate her out of discriminatory animus, further demonstrates Arrive's

discriminatory and retaliatory animus.  Also, while no discipline was warranted, Arrive failed to take any progressive discipline which is further evidence of pretext.  Arrive attempts to feign progressive discipline by claiming that it coached her; however, Arrive is unable to provide any actual discipline or any notice that her position may be in jeopardy.  Rather, Arrive admits that it treated its policy as a guideline that it did not strictly or uniformly enforce and enabled management and Human Resources to grant requests not made in strict accordance with policy. Thus, this demonstrates that this was not a basis for any discipline, let alone termination.

Furthermore, providing Ms. Grady with the reasonable accommodation of intermittent absences would not have created an undue hardship on Arrive.  Arrive attempts to allude to undue hardship by claiming that it would have been inconvenient for Ms. Grady to be absent for a single day during a stress test of a new system.  Inconvenience and it not being "ideal" to have someone out is insufficient to establish undue hardship.  Likewise, the fact that Mr. Bula asked Ms. Grady how important the absence was demonstrates that Arrive could provide the absence for something it deemed important, which further demonstrates that approving the absence would not have created an undue hardship.  Thus, Arrive clearly refused to reasonably accommodate Ms. Grady or otherwise engage in the interactive process and terminated Ms. Grady out of discriminatory and retaliatory animus.

## II. <u>Conclusion</u>

Ms. Grady was a strong, dedicated employee.  However, her superior subjected her to disparate treatment and derogatory comments out of discriminatory animus for her race, including instructing another employee to find a reason to terminate Ms. Grady solely out of discriminatory animus based on perpetuation of discriminatory racial stereotypes.  As a result of the incessant discriminatory harassment, Ms. Grady suffered a flare in her disability and requested the reasonable accommodation of intermittent absences and escalated concerns of discrimination. Instead of reasonably accommodating Ms. Grady, Arrive terminated her out of discriminatory and retaliatory animus under the pretext of her disability-related absences.  Therefore, Ms. Grady has established a claim of discrimination and retaliation based on her race under Title VII of the Civil Rights Act of 1964 and disability in violation of Title I of the Americans with Disabilities Act of 1990. Any other issues addressed in Arrive's position statement are either irrelevant, or redundant and unworthy of discussion. We respectfully request the EEOC enter a CAUSE finding.

Respectfully submitted,

Zane Herman, Esq.
Zane.herman@spielbergerlawgroup.com

cc:    Kateline Gardiner, Esq.
       Samantha Koempel, Esq.
       Diana Estrada, Esq.

**From:** Nikole Grady <ngrady@arrivelogistics.com>
**To:** nikole grady <nikolegrady3@yahoo.com>
**Sent:** Thursday, September 15, 2022, 09:37:32 AM CDT
**Subject:**

Hello Sir, Is is possible i can speak with you today? Yesterday Adolfo mentioned my performance and i just would like to follow up. I was first informed my Katie and Felicia that we would be doing limited work for each account because we had so many. Moving forward Adolfo explained we are giving each account what they need. I went in the office thinking that because it was more responsibility that meant I would need to brush up on the account to provide the help needed. I get a slack from Adolfo saying my performance, When i informed him that they mentioned I responded to a few wrong email that were meant for the shipper he was very confused as tho they mentioned more. When I ask that we all have a meeting he said that this is the way it works they come to him and he comes to me. However, it seem to be a disconnect between what they are telling him and me. Also the super power gift that he can spot all my mistakes. ( his words not mine) must have glitched out because i seen a few unanswered slack message others did not respond to. So it seems to be that his gift only works for me.
--


--

**Nikole Grady**
*Sales Representative*

**O** 312-535-8531
**M** 312-962-9575

www.arrivelogistics.com
Our Story | Our People | Submit Feedback


**From:** Nikole Grady <ngrady@arrivelogistics.com>
**To:** nikole grady <nikolegrady3@yahoo.com>
**Sent:** Tuesday, October 4, 2022, 01:58:22 PM CDT
**Subject:**



**From:** Nikole Grady <ngrady@arrivelogistics.com>
**To:** nikole grady <nikolegrady3@yahoo.com>
**Sent:** Tuesday, October 4, 2022, 01:57:32 PM CDT
**Subject:**



From: **Arrive Logistics** <arrivelogistics@myworkday.com>
Date: Tue, Oct 4, 2022 at 12:08 PM
Subject: Request Time Off - Canceled
To: <ngrady@arrivelogistics.com>

Business Process: Absence Request: Nikole Grady
Subject: Nikole Grady
Details: Absence Request for Nikole Grady effective on 09/30/2022
Click Here to view the notification details.

This email was intended for ngrady@arrivelogistics.com · Manage Preferences

From: **Arrive Logistics** <arrivelogistics@myworkday.com>
Date: Mon, Oct 3, 2022 at 4:01 PM
Subject: Request Time Off - Denied
To: <ngrady@arrivelogistics.com>

Business Process: Absence Request: Nikole Grady
Subject: Nikole Grady

Details: Absence Request for Nikole Grady effective on 10/04/2022
[Click Here to view the notification details.](#)

This email was intended for **ngrady@arrivelogistics.com** · **Manage Preferences**

**From:** Nikole Grady <ngrady@arrivelogistics.com>
**To:** nikole grady <nikolegrady3@yahoo.com>
**Sent:** Monday, October 3, 2022, 04:33:09 PM CDT
**Subject:**





From: **nikole grady** <nikolegrady3@yahoo.com>
Date: Wed, Oct 19, 2022 at 6:57 PM
Subject:
To: Diana Estrada <diana.estrada@spielbergerlawgroup.com>


I'm sorry I didn't forward it to the email chain you provided. It just some of these emails you can only see if I forward it. This is my request I sent to heather requesting the FMLA paperwork

----- Forwarded Message -----
**From:** Nikole Grady <ngrady@arrivelogistics.com>
**To:** nikole grady <nikolegrady3@yahoo.com>
**Sent:** Tuesday, October 4, 2022, 01:57:07 PM CDT
**Subject:**



From: **Arrive Logistics** <arrivelogistics@myworkday.com>
Date: Tue, Oct 4, 2022 at 12:08 PM
Subject: Request Time Off - Canceled
To: <ngrady@arrivelogistics.com>


Business Process: Absence Request: Nikole Grady
Subject: Nikole Grady
Details: Absence Request for Nikole Grady effective on 09/30/2022
Click Here to view the notification details.


This email was intended for ngrady@arrivelogistics.com · Manage Preferences

From: Nikole Grady <ngrady@arrivelogistics.com>
To: nikole grady <nikolegrady3@yahoo.com>
Sent: Tuesday, October 4, 2022, 01:56:22 PM CDT
Subject:

