UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NIKOLE GRADY,

    Plaintiff,

  v.

DM TRANS, LLC d/b/a ARRIVE LOGISTICS,

    Defendant.

No. 24 CV 1222

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Nikole Grady filed this lawsuit against her former employer, defendant DM Trans, LLC d/b/a Arrive Logistics, for employment discrimination and retaliation based on race, color, and disability. Arrive moves to dismiss under Rule 12(b)(6) for failure to state a claim. The motion is granted in part and denied in part.

**I.**    **Legal Standards**

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The allegations must "raise a right to relief above the speculative level" and provide "further factual enhancement to take a claim… from the realm of 'possibility' to 'plausibility.'" *Hughes v. Northwestern Univ.*, 63 F.4th 615, 628 (7th Cir. 2023) (internal citations omitted); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together.").

A court reviewing a Rule 12(b)(6) motion to dismiss accepts all well-pled facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79. "A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation omitted). Even under a liberal reading, a pro se litigant must do more than recite the elements of a cause of action or make conclusory statements. *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) ("All we can do is remind litigants, including those who find themselves having to proceed pro se, that it is not enough for a complaint to allege labels and conclusions without providing facts.").

## II. Background

### A. Documents Attached to the Complaint

Grady attached various documents to her complaint. *See* [1] at 7–54.[1] A "plaintiff does not, simply by attaching documents to his complaint, make them a part of the complaint and therefore a basis for finding that he has pleaded himself out of court." *Powers v. Snyder*, 484 F.3d 929, 932 (7th Cir. 2007). However, a court *may* consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (citation omitted).

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint, [1].

2

Additionally, "written instruments" attached to a pleading become "part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "The traditional understanding of an instrument is a document that defines a party's rights, obligations, entitlements, or liabilities—a contract, for example." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

While I do not take any of Arrive's arguments in response to Grady's EEOC complaint as part of the pleading, I do consider Grady's own statements, including those within Arrive's response that Grady refers to in her complaint. [1] at 11–16. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455–56 (7th Cir. 1998) (declining to accept as part of a complaint unilateral statements written by defendants that did not form the basis of plaintiff's claims and could have contained self-serving statements); *Reed*, 906 F.3d at 548. I also consider the employee handbook, arbitration agreement, and Arrive's code of conduct signed by Grady, as these are considered written instruments. [1] at 17–37. *See Williamson*, 714 F.3d at 436.

Finally, I accept the EEOC's Notice of Right to Sue as evidence that Grady has exhausted her administrative remedies and timely filed this complaint. [1] at 42–45. *See Caroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004).

**B.    Facts**

Nikole Grady, an African American woman, was an at-will employee of Arrive Logistics. [1] at 1, 21. Each week, Grady had a meeting with her team lead Adolfo Bula. [1] at 5, 8. During a weekly meeting in early September 2022, Bula became

3

angry with her use of hand gestures and told her to stop. [1] at 5, 8. After the meeting, Adolfo told other employees that he could fire Grady for "insubordination," which Grady believes stemmed from a stereotype that African Americans are "aggressive," and "hostile and insubordinate." [1] at 5, 47.

Grady reported her concerns to a human resources representative and her department manager. They dismissed the interaction as "cultural differences." [1] at 5, 8. After her internal complaint, Bula subjected Grady to "increased scrutiny" despite her strong performance, framing their weekly meetings as "performance-based meetings" to publicly humiliate her. [1] at 5, 8. Bula did not subject non-African American coworkers to the same level of scrutiny. [1] at 9. Despite reporting these issues to the department manager again, no proper remedial action was taken. [1] at 9.

Later that month, Grady experienced a "flare" in her disability—caused by her bipolar disorder and anxiety—and asked to leave early on October 1 and 4. [1] at 9. Bula denied her request, requiring a 10-day notice for time off. [1] at 9.[2] Grady points out that another white, non-disabled employee was able to request days off with only two days' notice. [1] at 9. On October 3, Grady requested paperwork to apply for

---

[2] Arrive's employee handbook requires employees to "request time off at least 2 weeks in advance, unless otherwise approved by management." [1] at 32. For sick leave, employees "must notify their manager by phone call at least thirty (30) minutes before the employee's scheduled shift." [1] at 33.

intermittent medical leave. [1] at 9. She was fired the next day. [1] at 9. Arrive says that Grady was fired for attendance issues. [1] at 9.

### III. Analysis

#### A. Title VII and § 1981

##### 1. *Discrimination*

Grady alleges race and color discrimination under Title VII of the Civil Rights Act of 1964 and § 1981 of the Civil Rights Act of 1866. [1] at 3–4. The legal analysis for discrimination claims under Title VII and § 1981 is the same. *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015).

Title VII prohibits employers from "discrimina[ting] against any individual" based on race or color. *Morris v. BNSF Ry. Co.*, 969 F.3d 753, 758 (7th Cir. 2020) (citing 42 U.S.C. § 2000e-2(a)(1)). To survive a motion to dismiss, Grady is not required to plead a prima facie case of employment discrimination. *Kaminski*, 23 F.4th at 777. She only needs to "allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to her protected characteristics." *Id.* (emphasis in original); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) ("In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense.").

To show an adverse employment action, a plaintiff must show "some harm respecting an identifiable term or condition of employment," but that harm does not need to be "significant." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024). The harm must have left plaintiff "worse off, but need not have left her significantly

5

so." *Id.* at 359. The adverse action simply needs to bring about some "'disadvantageous' change in an employment term or condition." *Id.* at 354 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). Terms or conditions of employment include "hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a [] change in benefits." *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

No one disputes that Grady is a member of a protected group. She alleges that being denied her time-off requests was an adverse employment action. [1] at 9. However, Grady admits she did not always follow company policy for requesting leave. [1] at 15, 50, 52; [19] at 4, 6.[3] Denying a leave request when it has been requested outside of company policy is not a disadvantageous change to Grady's benefits. *See* [19] at 4, [1] at 9. While it is an inconvenience to be denied a day off, Grady's benefits were not changed. She was still entitled to time off. She just could not use her time off without proper notice to her employer. There was no "disadvantageous" change in her employment terms or conditions based on the denial of her time off requests. *See Muldrow*, 601 U.S. at 354. This claim is dismissed.

Being terminated is an adverse employment action. *See id.* Grady must allege enough to allow for a plausible inference that she was terminated because of her race.

---

[3] Grady had initially requested time off under sick leave. [1] at 15, 52. Her request on September 26 for sick leave on October 1 and 4 was not in violation of the employee handbook, which only requires 30 minutes' notice for sick leave. [1] at 33. The problem is that when pushed on the reason for her leave for that day, Grady said, "I will inform hr to take it from another slot," and that "I had this day planned for a while." [1] at 52. Once Grady changed her request from sick leave to vacation leave, she was outside of company policy.

6

Taking Grady's claims as true, during a meeting with Bula, Bula became angry when Grady used hand gestures, and threatened to fire her for "insubordination." Grady claims that this reflects a stereotype that African Americans are "hostile and insubordinate," and "aggressive." [1] at 5, 47. Grady maintains that this shows she was fired because of her race. But it is not clear from the complaint how Bula's alleged racial stereotyping during one meeting was the cause of Grady's termination. There are no facts alleged that connect the single comment to Grady ultimately being fired. Because Grady has not alleged facts that allow a plausible inference that she was fired because of her race, the claim is dismissed.

    2.    *Retaliation*

The antiretaliation provision of Title VII prohibits an employer from "discriminat[ing] against" an employee who "opposed any practice" that is unlawful under Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). To state a claim for retaliation, Grady must allege that "she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (quoting *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013)). The report of discrimination must include that the discrimination occurred because of the employee's protected characteristic: "Merely complaining in general terms of harassment or discrimination, without specifying a connection to a protected class or providing facts to create such an inference, is insufficient." *McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022). An informal

complaint to a supervisor about racial discrimination or harassment is a protected activity. *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011).

The adverse employment action "must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007). An employment action is "materially" adverse when it threatens "significant" harm rather than "trivial harms" or "petty slights or minor annoyances." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Although materiality is not required to allege Title VII discrimination, it is an element of Title VII retaliation claims. *See Muldrow*, 601 U.S. at 357.

Grady's claim for retaliation fails because she has not alleged that she engaged in a protected activity. Although Grady says she "escalated [her] concerns regarding the discriminatory treatment" to HR and her department manager, the complaint does not set forth allegations that she told HR that she was being discriminated against on the basis of her race. [1] at 5, 8. *McHale*, 41 F.4th at 872. Grady interpreted Bula's comments that she was "insubordinate" as racially stereotyping her as "hostile." [1] at 5, 8. But nowhere in the complaint does Grady say she relayed this interpretation to HR or the department manager. Instead, Grady simply says she told HR and the department manager that she suffered "discriminatory harassment" from Bula. This general complaint of harassment is not enough to allege that Grady engaged in a statutorily protected activity. *Id.*

Even if her report were enough to allege a protected activity, Grady's claim fails because there was no adverse action connected to her report. Grady alleges three adverse actions: first, that after she made the complaint to HR, Bula began subjecting her to "increased scrutiny," including by referring to their weekly meeting as "performance-based" meeting. [1] at 8. Second, Bula denied her requests for time off. [1] at 9. Third, Grady says that "the temporal proximity between my request for reasonable accommodations and intermittent protected leave and my sudden termination, combined with the disparate treatment as compared to my non-disabled and Caucasian counterparts, further demonstrates that Arrive terminated me out of discriminatory and retaliatory animus for my race, disability, and related protected activity." [1] at 9.

Being subjected to "retaliatory harassment" can be an adverse employment action. *Stutler v. Ill. Dep't of Corrs.*, 263 F.3d 698, 703 (7th Cir. 2001). Grady claims that the "increased scrutiny" Bula subjected her to, including calling their weekly meeting "performance-based" constitutes retaliatory harassment. There are no facts to plausibly infer that simply calling a meeting "performance-based" is a "materially adverse" action. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840–41 (7th Cir. 2009) (finding that occasional inappropriate comments do not alter the terms and conditions of employment). Even more formalized "performance improvement plans" are not, "without more, adverse employment actions." *Davis*, 651 F.3d at 677.

Grady does not allege she was put on any sort of performance improvement plan. Rather, she says Bula subjected her to increased scrutiny and changed the name

9

of her already-held weekly meeting to a "performance-based" meeting. There is no allegation that the type of meeting changed, that she was the only employee required to have weekly meetings, or that these meetings took more time, required extra work, or impacted her pay or ability to do her job. There is no allegation that her supervisor's term for the meeting threatened harm to Grady's terms or conditions of employment. Because this is not a materially adverse employment action, Grady has failed to state a claim for retaliation based on these actions. And as explained above, denying time off where it was not requested in compliance with company policy, is similarly not an adverse employment action. *See Muldrow*, 601 U.S. at 354. The retaliation claim based on the increased scrutiny and denial of time off is dismissed.

Termination is a materially adverse employment action. *See id.* Grady must allege facts to support a plausible inference that she was terminated because she complained about Bula's "discriminatory harassment." There are no facts establishing any such causal connection. Grady summarily states that the "disparate treatment" she received "further demonstrates that Arrive terminated me out of discriminatory animus for my race, disability, and related protected activity." [1] at 9. But there is nothing in the complaint that shows how the protected activity itself led to her termination. *See Kaminski*, 23 F.4th at 777–78. Because Grady has failed to allege any facts that her report to HR specified the "discriminatory harassment"

10

was based on race, or that she was terminated because she reported Bula, this claim is dismissed.[4]

## B. ADA

### 1. *Discrimination and Failure to Accommodate*

Under the Americans with Disabilities Act, an employer may not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To state a discrimination claim under the ADA, a plaintiff must allege: (1) she was disabled within the meaning of the ADA; (2) she was qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Sandefur v. Dart*, 979 F.3d 1145, 1151 (7th Cir. 2020). An employer "unlawfully discriminates against a 'qualified individual with a disability' when it fails to make 'reasonable accommodations to the known physical or mental limitations' of the disabled employee." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 792 (7th Cir. 2005) (quoting 42 U.S.C. §§ 12112(a), (b)(5)(A)). To plead a claim for failure to accommodate, a plaintiff must show: (1) she is a qualified individual with a disability; (2) her employer

---

[4] Title VII's antiretaliation provision does not cover retaliation on the basis of disability. *See* 42 U.S.C. § 2000e-2(a)(1) (describing protected characteristics of "race, color, religion, sex, or national origin"). "Disability does not fall under any of these categories but instead is protected by its own separate statute, the ADA." *Tarpley v. City Colleges of Chi.*, 87 F. Supp. 3d 908, 913 (N.D. Ill. 2015).

was aware of her disability; and (3) her employer failed to reasonably accommodate the disability. *Id.* at 797.

The ADA defines disability as: "(1) a physical or mental impairment that substantially limits one or more major life activities of [the plaintiff]; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C). Major life activities include tasks such as learning, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). Merely having a medical condition is not enough to constitute a disability under the ADA. *Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011).

Grady claims she was fired for her disability. Grady also alleges that she contacted HR to request the "reasonable accommodation of leaving early on the days of October 1 and October 4," which were both denied. Construing her complaint liberally, I take this to be a claim for failure to accommodate. *See Erickson*, 551 U.S. at 94.

Grady alleges that she has a disability due to her bipolar disorder and anxiety. [1] at 8. But that allegation alone does not support an inference that her bipolar disorder or anxiety "substantially limits" her major life activities, that there is a record that she has an impairment that substantially limits her major life activities, or that Arrive regarded her as having such an impairment. Grady needs to allege more than the mere fact of her conditions to state a claim for discrimination under the ADA. *Powers*, 667 F.3d at 819. While she claims in her response that she has a documented disability, [19] at 5, neither the response brief nor the complaint support

12

the conclusory allegation. Because the complaint fails to explain how her conditions make her disabled, that she has a record of being disabled, or that Arrive viewed her as disabled, Grady has not sufficiently alleged she was disabled within the meaning of the ADA.

Because Grady has failed to allege facts that give rise to a plausible inference that she is disabled under the ADA, her ADA discrimination claim (including any failure-to-accommodate theory) is dismissed.

    3.    *Retaliation*

Grady can still state a claim for retaliation if Arrive "retaliated against [her] for attempting to raise a good-faith claim under the ADA." *Cassimy v. Bd. of Educ. of Rockford Pub. Schs., Dist. No. 205*, 461 F.3d 932, 938 (7th Cir. 2006); *see also Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007) ("The [ADA] prohibits an employer from retaliating against an employee who has raised an ADA claim, whether or not that employee ultimately succeeds on the merits of that claim."). "[T]he anti-retaliation provision of the ADA... uses similar language to that in Title VII... thus, courts look to Title VII retaliation cases for guidance in deciding retaliation cases under the ADA." *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009). A plaintiff needs to show she engaged in a protected activity and suffered an adverse employment action because of it. *Squibb*, 497 F.3d at 786. A protected activity for retaliation purposes is when the employee asserts her rights under the ADA "by either seeking an accommodation or raising a claim of discrimination due to [her] disability.'" *Trahanas v. Northwestern Univ.*, 64 F.4th 842, 856 n.6 (7th Cir.

2023) (quoting *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814–15 (7th Cir. 2015)). A good-faith claim is one where a plaintiff reasonably and sincerely believed that she was disabled and sought an accommodation. *See Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1096 (7th Cir. 1998) ("It is a well-established principle that, to receive protection under the ADA, a plaintiff must have acted in good faith and *with a reasonable and sincere belief that he or she is opposing unlawful discrimination.*" (emphasis in original) (internal quotations omitted)).

Grady alleges that she requested an accommodation due to her bipolar disorder and anxiety—namely, requesting paperwork for medical leave. She says she was fired the very next day. Being fired is an adverse employment action. *Muldrow*, 601 U.S. at 354. While "[s]uspicious timing is rarely enough to create a triable issue," in cases "where the adverse impact comes 'on the heels' of the protected activity," that can be enough to sustain the claim. *Casna*, 574 F.3d at 427 (quoting *McClendon v. Ind. Sugars*, 108 F.3d 789, 796 (7th Cir. 1997)). Grady alleges she was fired the day after she requested accommodations. She further claims that she was fired *for* requesting medical leave. Grady says her bipolar disorder and anxiety are the conditions causing her disability, for which she requested medical leave. [1] at 8–9. Arrive does not dispute that Grady has these medical conditions or argue that Grady did not reasonably believe she had a disability. In the light most favorable to Grady, she put forward enough to show that she had a good faith belief that her anxiety and bipolar disorder disabled her, and that she asked for an accommodation to address a "flare" in her disability. [1] at 9. She was then fired the next day. This is sufficient to state a

14

claim that she was retaliated against under the ADA (even if Grady cannot show that she was disabled within the meaning of the ADA). *Cassimy*, 461 F.3d at 938.

A plaintiff can plead herself "out of court by pleading facts that show [s]he has no legal claim." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). This can happen where pleaded facts "establish an impenetrable defense" to her claims. *Tamayo*, 526 F.3d at 1086. Here, Grady has pleaded that she did not follow Arrive's policy for taking leave. *See* [1] at 15, 50, 52; [19] at 4, 6. Arrive argues that these additional facts foreclose a plausible inference of discrimination on the basis of disability. But although the protected activity must have been a "but-for cause of the alleged adverse action," for a retaliation claim, this "does not mean that the protected activity must have been the only cause of the adverse action. Rather, it means that the adverse action would not have happened without the activity." *Carlson*, 758 F.3d at 828 n.1. Although Grady did not follow Arrive's policy for taking leave, that does not preclude her claim. Grady could still prove that without her asking for an accommodation, she would not have been fired. At this early stage, she has pleaded enough facts to allege that she was fired for her request for accommodation. The motion to dismiss the ADA retaliation claim is denied.

## IV.   Conclusion

Defendant's motion to dismiss, [12], is granted in part and denied in part. Grady's claims under Title VII and § 1981 for race and color discrimination and retaliation are dismissed, and her claim of employment discrimination based on

15

disability under the ADA is dismissed. All dismissals are without prejudice.[5] Her claim for ADA retaliation remains.

ENTER:

                                                               Manish S. Shah
                                                              United States District Judge

Date: October 25, 2024

---

[5] "Ordinarily, a plaintiff whose complaint is dismissed under Rule 12(b)(6) 'should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.'" *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, 44 F.4th 1014, 1023 (7th Cir. 2022) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015)).